# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

DARREN JAMMAL KING and ⟩
JAMAL CHRISTOPHER ⟩
⟩
      Plaintiffs, ⟩
⟩   **Case No. 3:19-CV-1337-MAB**
vs. ⟩
⟩
LARREN KECK, CODY JACOBS, ⟩
BYRD HUBER, DAVID TARRANT, ⟩
LANCE CLEVENGER, ⟩
ANDREW HAMBLIN, and ⟩
RANDALL COBB ⟩
⟩
      Defendants. ⟩

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on the motion for summary judgment filed by Defendants Lance Clevenger, Randall Cobb, Andrew Hamblin, Byrd Huber, Cody Jacobs, Larren Keck, and David Tarrant (Doc. 54; *see also* Doc. 55). For the reasons explained below, the motion is granted.

## BACKGROUND

Plaintiffs Darren Jammal King and Jamal Christopher brought this action to address unconstitutional conditions of confinement at the White County Jail in Carmi, Illinois, where they were detainees in 2018 through 2019.[1] Specifically, Plaintiffs alleged they were given inadequate and unhealthy food, and subjected to filthy living conditions,

---

[1] A third Plaintiff, Denzael Jones, was dismissed without prejudice at the outset of litigation for want of prosecution (Doc. 21).

such as lack of cleaning supplies, insect infestations, peeling paint, poor ventilation, poor lighting, small cells, exposure to mold, a lack of smoke/carbon monoxide detectors, and a denial of recreational activities. (Doc. 21; *see also* Doc. 1, pp. 1–10). They further alleged that they suffered from constipation as a result of their inadequate diet, and they developed scabies and jock itch as a result of their exposure to filthy living conditions (Doc. 21; *see also* Doc. 1, p. 3). They claimed that they complained about their living conditions to no avail to the jail administrators, Byrd Huber and Randall Cobb, and to officers David Tarrant, Andrew Hamblin, and Cody Jacobs, and Larren Keck (Doc. 21; *see also* Doc. 1, pp. 5-6). Plaintiffs also filed grievances with Officers Keck and Lance Clevenger about their inadequate, unhealthy, and improperly prepared diet (Doc. 21; *see also* Doc. 1, p. 5).

Following a threshold review of the complaint pursuant to 28 U.S.C. § 1915A, Plaintiffs were permitted to proceed on the following claims:

**Count 1:** Fourteenth Amendment claims against Huber, Cobb, Tarrant, Hamblin, Jacobs, and Keck for subjecting Plaintiffs to unconstitutional living conditions at the Jail in 2018 and 2019.

**Count 2:** Fourteenth Amendment claims against Clevenger and Keck for depriving Plaintiffs of adequate nutrition during their detention at the Jail in 2018 and 2019.

(Doc. 21).[2]

---

[2] It was unclear at the time the threshold order was issued whether Plaintiffs were pretrial detainees or convicted prisoners when their claims arose (Doc. 21, p. 5). Therefore, it was unclear whether the Fourteenth or Eighth Amendment governed their claims (*Id.*). Defendants assert in their motion that Plaintiff were pretrial detainees (Doc. 55, p. 2), and therefore the Fourteenth Amendment applies, not the Eighth Amendment. *Hardeman v. Curran*, 933 F.3d 816, 821–22 (7th Cir. 2019) (explaining that a pretrial detainee's § 1983 claims are analyzed under the Fourteenth Amendment while a convicted prisoner's claims are analyzed under the Eighth Amendment).

Defendants filed their motion for summary judgment on April 15, 2021 (Doc. 54; *see also* Doc. 55). They also filed the required notice advising Plaintiffs "of the consequences of failing to respond with affidavits" or other evidence (Doc. 56). *Bryant v. Madigan*, 84 F.3d 246, 248 (7th Cir. 1996); *Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992); *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982). Despite the notice, Plaintiffs failed to file a response within the 30-day window for doing so. *See* SDIL-LR 7.1(c). The Court then gave them until July 6, 2021 to show cause as to why their failure to respond to the motion for summary judgment should not be construed as an admission of the merits of the motion (Doc. 57). In the alternative to responding to the Order to Show Cause, Plaintiffs were told they could simply file a response to the motion for summary judgment (Doc. 57). They were explicitly warned that their failure to do one or the other could result in dismissal of the case for lack of prosecution (Doc. 57).

Plaintiff Christopher filed a response, stating simply that he had no objection to Defendants' motion for summary judgment (Doc. 58), which the Court construes as Plaintiff conceding to the motion. To date, Plaintiff King has not filed a response.

## ANALYSIS

This Court's Local Rules specifically provide that a "[f]ailure to timely file a response to a motion may, in the Court's discretion, be considered an admission of the merits of the motion." SDIL-LR 7.1(c). And under Federal Rule of Civil Procedure 41(b), a court may dismiss an action with prejudice "if the plaintiff fails to prosecute or to comply with [the Federal Rules of Civil Procedure] or any court order." FED. R. CIV. P.

41(b); *In re Bluestein & Co.*, 68 F.3d 1022, 1025 (7th Cir. 1995) ("District courts possess the inherent authority to dismiss a case sua sponte for want of prosecution as part of the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.") (internal quotations and citations omitted).

In this instance, the Court elects to construe Plaintiff King's failure to respond to the motion for summary judgment as an admission of the merits of the motion. And Plaintiff Christopher has conceded to the merits of the motion. That does not, however, automatically result in judgment for the movants. *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012) (citing *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). *See also Tobey v. Extel/JWP, Inc.*, 985 F.2d 330, 332 (7th Cir. 1993) ("Nowhere in Rule 56 is the granting of summary judgment authorized as a sanction for failing to file a timely response to a motion for summary judgment."). The Court must still ascertain whether Defendants have demonstrated that judgment is proper as a matter of law. *Keeton*, 667 F.3d at 884 (citing *Raymond*, 442 F.3d at 608).

Summary judgment is proper when the moving party "shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In deciding a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008). "Only if the court can say, on that sympathetic reading of the record, that no finder of fact could reasonably rule

in the unsuccessful movant's favor may the court properly enter summary judgment against that movant." *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 603 (7th Cir. 2015).

A pretrial detainee's claims regarding their conditions of confinement arises under the Fourteenth Amendment's Due Process Clause. *Hardeman v. Curran*, 933 F.3d 816, 821–22 (7th Cir. 2019). And all manner of Fourteenth Amendment claims brought by pretrial detainees, from excessive force to inadequate medical care to the general conditions-of-confinement claim presented here, are governed by the standard of objective reasonableness set forth by the Supreme Court in *Kingsley v. Hendrickson*. *Hardeman*, 933 F.3d at 823 (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 396–397 (2015)); *McCann v. Ogle Cty., Illinois*, 909 F.3d 881, 886 (7th Cir. 2018). This standard involves a two-step inquiry. *McCann*, 909 F.3d at 886. The first step looks at the defendant's state of mind and asks whether the defendant "acted purposefully, knowingly, or perhaps even recklessly" with respect to the conditions of confinement. *McCann*, 909 F.3d at 886; *Miranda v. Cty. of Lake*, 900 F.3d 335, 353 (7th Cir. 2018). *See also Kingsley*, 576 U.S. at 394–95 ("[A]s to the series of events that have taken place in the world, the defendant must possess a purposeful, a knowing, or possibly a reckless state of mind . . . because, as we have stated, 'liability for *negligently* inflicted harm is categorically beneath the threshold of constitutional due process.'") (citation omitted; emphasis in original). The second step asks whether the challenged conditions of confinement were *objectively* unreasonable in light of the totality of facts and circumstances. *McCann*, 909 F.3d at 886; *accord Mays v. Dart*, 974 F.3d 810, 819 (7th Cir. 2020), *cert. denied*, 142 S. Ct. 69 (2021). The plaintiff need not show that the

defendant was *subjectively* aware that the conditions posed a significant risk of harm, as would be required for a claim brought under the Eighth Amendment by a convicted prisoner. *McCann*, 909 F.3d at 886; *Miranda*, 900 F.3d at 350.

Here, the Court elects to skip the first step regarding the intentionality of Defendants' conduct and go straight to analyzing whether there is any evidence that the challenged conditions of confinement were unreasonable.

As it pertains to Count 1, "[i]t has been clearly established for decades that prisons must provide inmates with 'the minimal civilized measure of life's necessities.'" *Hardeman*, 933 F.3d at 820 (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). This general statement has been interpreted "as a requirement that prisons provide inmates with 'reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities.'" *Hardeman*, 933 F.3d at 820 (quoting *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016)). *See also Woods v. Thieret*, 903 F.2d 1080, 1082 (7th Cir. 1990) ("Clearly, prison officials have a responsibility to provide inmates with a minima of food, shelter and basic necessities.").

Here, Plaintiffs challenged the conditions in their cells and the lack of recreation. With regard to the cell conditions, there is an absence of evidence—meaning a complete failure of proof—as to the severity and duration of the alleged problems, including insect infestations, peeling paint, poor ventilation, cell size, mold, a lack of smoke/carbon monoxide detectors. Furthermore, the undisputed evidence shows that detainees were provided with cleaning supplies during the first shift on Monday, Wednesday, and Friday (Doc. 55-1 through Doc. 55-7). If detainees asked for cleaning supplies at other

times, the supplies were provided (Doc. 55-1; Doc. 55-2; Doc. 55-4). Extra cleaning supplies designed to kill mold were ordered, and when the mold problem persisted, the cells were scrubbed, painted with a mold-killing primer and then repainted (Doc. 55-3; Doc. 55-6). Given these facts and the lack of any evidence about the extensiveness of the purported problems, no reasonable jury could find that the cell conditions were so grossly unsanitary as to be objectively unreasonable and in violation of the Constitution.

As for the lack of recreation, the Seventh Circuit has recognized that a constitutional violation occurs "where movement is denied and muscles are allowed to atrophy and the health of the individual is threatened." *Smith v. Dart*, 803 F.3d 304, 313 (7th Cir. 2015) (citation omitted). Here, Defendants seem to acknowledge that detainees were denied access to the outdoor recreation yard (*see* Doc. 55-3, Doc. 55-7). However, "there is a significant difference between a lack of outdoor recreation and an inability to exercise." *Smith*, 803 F.3d at 313. There is a complete dearth of evidence that Plaintiffs were unable to exercise inside their cells or in jail common areas. Consequently, there is nothing from which a reasonable jury could find that the lack of recreation was a problem of constitutional magnitude.

As it pertains to Count 2, the Constitution mandates that prison officials provide inmates with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it." *Smith*, 803 F.3d at 312 (citation omitted). Here, the undisputed evidence shows the jail followed the Illinois Administrative Code regarding prisoner meals and all meals served were in accordance with the state-mandated guidelines for caloric intake

and appropriate temperature (Doc. 55-5). Furthermore, the jail's menu system was approved by state regulators (Doc. 55-5). In the event complaints were made about how food was handled, changes were instituted (Doc. 55-1). If there was a problem with a meal—for example, the detainee was supposed to receive a vegetarian meal but did not— a replacement was obtained (Doc. 55-2, 55-3). And when complaints were made regarding the variety of food or the nutritional components (*e.g.,* not enough protein) jail officials worked with the food vendor to address the complaints (Doc. 55-6). Given these facts, no reasonable jury could find that Plaintiffs were provided with inadequate food such that it violated the Constitution.

For these reasons, the Court concludes that Defendants have demonstrated they are entitled to judgment as a matter of law as to Counts 1 and 2.

## CONCLUSION

The motion for summary judgment filed by Defendants Lance Clevenger, Randall Cobb, Andrew Hamblin, Byrd Huber, Cody Jacobs, Larren Keck, and David Tarrant (Doc. 54) is **GRANTED**. Plaintiffs' claims against these Defendants are **DISMISSED** with prejudice and the Clerk of Court is **DIRECTED** to enter judgment in their favor and close this case on the Court's docket.

**IT IS SO ORDERED.**

**DATED: February 2, 2022**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**

<u>NOTICE</u>

If Plaintiffs wish to contest this Order, they has two options. They can ask the Seventh Circuit to review the order, or they can first ask the undersigned to reconsider the Order before appealing to the Seventh Circuit.

If Plaintiffs choose to go straight to the Seventh Circuit, they must file a notice of appeal *within 30 days* from the entry of judgment. FED. R. APP. P. 4(a)(1)(A). The deadline can be extended for a short time only if Plaintiffs file a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. FED. R. APP. P. 4(a)(5)(A), (C). *See also Sherman v. Quinn*, 668 F.3d 421, 425 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807 (7th Cir. 2011) (explaining the excusable neglect standard).

On the other hand, if Plaintiffs want to start with the undersigned, they should file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). The motion *must* be filed within twenty-eight (28) days of the entry of judgment, and the deadline *cannot* be extended. FED. R. CIV. P. 59(e); 6(b)(2). The motion must also comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir. 2010); *Talano v. Nw. Med. Faculty Found., Inc.*, 273 F.3d 757, 760 (7th Cir. 2001). *See also Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012) ("To prevail on a Rule 59(e) motion to amend judgment, a party must clearly establish (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.") (citation and internal quotation marks omitted).

So long as the Rule 59(e) motion is in proper form and submitted on-time, the 30-day clock for filing a notice of appeal will be stopped. FED. R.APP. P. 4(a)(4). The clock will start anew once the undersigned rules on the Rule 59(e) motion. FED. R.APP. P. 4(a)(1)(A), (a)(4), (a)(4)(B)(ii). To be clear, if the Rule 59(e) motion is filed outside the 28-day deadline or "completely devoid of substance," the motion will not stop the clock for filing a notice of appeal; it will expire 30 days from the entry of judgment. *Carlson v. CSX Transp., Inc.,* 758 F.3d 819, 826 (7th Cir. 2014); *Talano v. Northwestern Medical Faculty Foundation, Inc.,* 273 F.3d 757, 760–61 (7th Cir. 2001); *Martinez v. Trainor,* 556 F.2d 818, 819–20 (7th Cir. 1977). Again, the deadline for filing a notice of appeal can be extended only on a written motion by Plaintiffs showing excusable neglect or good cause.

The Court has one more bit of instruction regarding the appeals process. If Plaintiffs choose to appeal to the Seventh Circuit, they can do so by filing a notice of appeal in this Court. FED. R. APP. P. 3(a). The current cost of filing an appeal with the Seventh Circuit is $505.00. The filing fee is due at the time the notice of appeal is filed. FED. R. APP. P. 3(e). If Plaintiffs cannot afford to pay the entire filing fee up front, they must file a motion for leave to appeal *in forma pauperis* ("IFP motion") along with a recent statement for their prison trust fund accounts. *See* FED. R. APP. P. 24(a)(1)(C). The IFP motion must set forth the issues Plaintiffs plan to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If they are allowed to proceed IFP on appeal, they will be assessed an initial partial filing fee. 28 U.S.C. § 1915(b)(1). They will then be required to make monthly payments until the entire filing fee is paid. 28 U.S.C. § 1915(b)(2).